THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARY ORR, | § | |
|     *Plaintiff*, | § | |
| | § | Civil Action No. 1:24-cv-00458 |
| v. | § | |
| | § | |
| CENTER AT PARMER, LLC and | § | |
| VERITAS MANAGEMENT GROUP, | § | |
| LLC, | § | |
|     *Defendants*. | § | |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, MARY ORR ("Plaintiff" or "Ms. Orr") hereby files this Complaint against

Defendants, CENTER AT PARMER, LLC (hereinafter sometimes referred to as "the Center") and

VERITAS MANAGEMENT GROUP, LLC (hereinafter sometimes referred to as "Veritas"), for

violations of the Title VII of the Civil Rights Act of 1964 ("Title VII") and Chapter 21 of the Texas

Labor Code. In support of her causes of action, Plaintiff states the following:

## I.    NATURE OF THE CASE

Plaintiff informed Defendants in her interview that she could not work on Fridays or

Saturdays because of her religious observance of Shabbat, and Defendants promised to provide

this accommodation. However, within a couple weeks, Defendants started scheduling her for

Friday and Saturday shifts. When Plaintiff complained, management told her that they would not

accommodate her and that she needed to either work her shifts as scheduled, which meant she

could not observe Shabbat, or change her employment status, which meant she would no longer

have guaranteed shifts or health insurance.

Forced to choose between her religious beliefs and her livelihood, Plaintiff agreed to change her employment status and lose her guaranteed shifts and insurance because she simply could not work on Shabbat. Plaintiff continued to complain that Defendants were breaking the law. Ultimately, Defendants just took her off the schedule completely and refused to respond to her. Plaintiff then filed a Charge with the EEOC. After investigating the issue, the EEOC found that Defendants revoked or disregarded Plaintiff's approved religious accommodations, discriminated against Plaintiff based on her religion, retaliated against Plaintiff, and violated Title VII.

## II. PARTIES

1.      Plaintiff MARY ORR is an individual residing in Williamson County, Texas.

2.      Defendant CENTER AT PARMER, LLC is a Colorado limited liability company that is registered with the Texas Secretary of State, does business in the State of Texas, maintains and employs individuals at a nursing facility located at 13800 N FM 620, Austin, TX 78717, and may be served with process by and through its registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, TX 75201, or wherever else it may be found.

3.      Defendant VERITAS MANAGEMENT GROUP, LLC is a Colorado limited liability company that does business in the State of Texas, maintains and employs individuals at a nursing facility located at 13800 N FM 620, Austin, TX 78717, and may be served with process by and through its registered agent, Monte Murdock, at 1155 Kelly Johnson Blvd, Suite 205, Colorado Springs, CO 80920, or wherever else he may be found.

4.      Upon information and belief, Veritas owns and/or manages the Center, including the nursing facility located at 13800 N FM 620, Austin, TX 78717, and employs individuals who reside in Williamson County and/or Travis County. Upon information and belief, at all times

relevant to this lawsuit, the Center was an alter ego of Veritas and vice versa such that Defendants are jointly and severally liable for the damages discussed herein.

### III. JURISDICTION AND VENUE

5. This Court has jurisdiction to hear the merits of Plaintiff's Title VII claims under 28 USC § 1331, because the claims arise under federal law. This Court has jurisdiction to hear the merits of Plaintiff's state-law claims under 28 USC §1367, because the claims arise under the same operative facts as Plaintiff's federal claims.

6. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants maintain a place of business in the district of this United States District Court, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Williamson County, Texas.

### IV. FACTUAL BACKGROUND

7. Plaintiff is a Licensed Vocational Nurse ("LVN"). Plaintiff earned her LVN license in 2010 and has maintained her license since then.

8. It is Plaintiff's sincerely held religious belief that she is required to observe Shabbat (also sometimes referred to as "Sabbath"), which is a day of rest and abstention from work. According to halakha (biblical religious law), Shabbat is observed from a few minutes before the sun sets on Friday evening until the appearance of three stars in the sky on Saturday night, or an hour after sundown (the "observation period"). Shabbat observance entails, among other things, refraining from work activities during the observation period.

9. Prior to working for Defendants, Plaintiff was working as an LVN at a different facility, which accommodated her religious observance of Shabbat by not scheduling her any shifts that would require her to work during the observation period.

10.    Around August 2021, Plaintiff interviewed with Lisa Norton, Regional Director of Clinical Services, for an LVN position at the Center at Parmer, located at 13800 N FM 620, Austin, TX 78717. During the interview, Plaintiff informed Regional Director Norton of her religious observance of Shabbat. Because the position required overnight shifts (6PM to 6AM), Plaintiff told Regional Director Norton that, in order to observe Shabbat, she would not be able to work Friday or Saturday overnight shifts. Regional Director Norton told Plaintiff that the religious accommodation requested would not be an issue and that Defendants would not schedule Plaintiff on Friday or Saturday overnight shifts ("the accommodation").

11.    The following shows the approximate overlap between Friday and Saturday overnight shifts and the observance period:

| | Overnight Shift | Shabbat |
|---|---|---|
| Friday 4pm | | |
| Friday 6pm | �change | |
| Friday 8pm | ▒ | ▒ |
| Friday 10pm | ▒ | ▒ |
| Saturday 12am | ▒ | ▒ |
| Saturday 2am | ▒ | ▒ |
| Saturday 4am | ▒ | ▒ |
| Saturday 6am | | ▒ |
| Saturday 8am | | ▒ |
| Saturday 10am | | ▒ |
| Saturday 12pm | | ▒ |
| Saturday 2pm | | ▒ |
| Saturday 4pm | | ▒ |
| Saturday 6pm | ▒ | ▒ |
| Saturday 8pm | ▒ | ▒ |
| Saturday 10pm | ▒ | |
| Sunday 12am | ▒ | |
| Sunday 2am | ▒ | |
| Sunday 4am | ▒ | |

12.    Regional Director Norton never told Plaintiff that the accommodation would be temporary; that the accommodation would only be for Saturday shifts; or that Plaintiff would be scheduled for Friday and Saturday shifts but would need to get them covered. Regional Director

Norton simply promised that, as a religious accommodation, Defendants would not schedule Plaintiff for Friday or Saturday overnight shifts.

13.     Because Regional Director Norton unequivocally granted Plaintiff the accommodation, Plaintiff quit her job where she was being accommodated, and accepted employment with Defendants.

14.     Plaintiff started working for Defendants on September 9, 2021.

15.     On September 9, 2021, Plaintiff attended orientation for the new position with Defendants. During the orientation, Plaintiff received a paper copy of the nursing staff schedule for the rest of September, which showed that she was scheduled to work some Friday and Saturday overnight shifts. Plaintiff immediately informed the Scheduling Coordinator that she was not supposed to be scheduled for Friday or Saturday overnight shifts due to the accommodation. The Scheduling Coordinator then marked out Plaintiff's schedule with a pencil and wrote in a new schedule that only had her working Sunday, Monday, and Tuesday overnight shifts. Under the updated penciled-in schedule, Plaintiff was supposed to work overnight shifts on Monday, September 13, 2021; Tuesday, September 14, 2021; Sunday, September 19, 2021; Monday, September 20, 2021; Tuesday, September 21, 2021; Sunday, September 26, 2021; Monday, September 27, 2021; and Tuesday, September 28, 2021.

16.     Though Plaintiff was originally scheduled to work overnight shifts on Friday, September 17, 2021, and Saturday, September 18, 2021, Plaintiff did not work those shifts and instead worked the shifts as outlined in the updated schedule. No one called, texted, confronted, or disciplined Plaintiff about her not working those Friday and Saturday overnight shifts.

17.     In accordance with the updated penciled-in schedule, Plaintiff worked on Monday, September 13, 2021; Tuesday, September 14, 2021; Sunday, September 19, 2021; and Monday,

September 20, 2021 without issue. No one tried to send her home or claim that she was not scheduled for those shifts.

18.     On Tuesday, September 21, 2021, Plaintiff came to work per the updated penciled-in schedule. During her shift, Plaintiff overheard another nurse talking on the phone with Tara Morgan, the Assistant Director of Nursing ("ADON"), about Plaintiff's religious accommodation and schedule. Plaintiff asked the nurse to tell ADON Morgan to talk with Plaintiff directly instead of discussing her religious accommodation with others. The nurse told ADON Morgan what Plaintiff said and then the nurse told Plaintiff that she needed to reach out to ADON Morgan or Natalie Sorenson, the Director of Nursing ("DON").

19.     Between Tuesday, September 21, 2021, and Thursday, September 23, 2021, Plaintiff called and tried to speak with either ADON Morgan or DON Sorenson as directed, and then left messages when she was unable to reach them.

20.     At 3:22 PM on Thursday, September 23, 2021, Plaintiff texted DON Sorenson, "Hi Natalie, I called the facility to try to set up a time that I could speak to you about my schedule. I really want to get this matter taken care of as soon as possible. I look forward to hearing from you." DON Sorenson responded, "I'm not in the office today and I don't handle the schedule. Right now, it's Tara. I will tell her to contact you."

21.     At 3:42 PM on Thursday, September 23, 2021, ADON Morgan texted Plaintiff, "Mary, this is Tara (ADON at The Center at Parmer)

22.      Natalie asked me to reach out to you about a message that you called about your schedule. After speaking with Natalie she asked that I let you know that we are sorry if there was confusion when you were hired. You will need to either go onto a 2-2-3 rotation like everyone else or you will need to go to PRN status. Unfortunately we cannot accommodate you wanting to only

work Sunday, Monday & Tues-days." Plaintiff then tried calling ADON Morgan, and ADON Morgan texted, "Sorry. In a meeting. Can't pick up phone." Plaintiff texted back, "Okay. Will you give me a call when you're out of your meeting?" ADON Morgan replied, "Yes ma'am." However, ADON Morgan did not return Plaintiff's call as promised.

23.    PRN is an abbreviation for the Latin pro re nata, meaning "as the need arises." Unlike other nurses, PRN nurses at the Center do not get guaranteed shifts or health insurance.

24.    Though ADON Morgan's text message indicated that Defendants did not intend to honor the accommodation moving forward, Plaintiff hoped that Defendants might at least honor the accommodation through the end of September since the updated schedule was already made.

25.    At 6:21 PM on Friday, September 24, 2021, Plaintiff texted ADON Morgan, "I wanted to ask you will I be allowed to finish out my schedule this month? I'm really disappointed that we couldn't reach an agreement regarding the schedule. I feel I made a bad decision due to being given false information. I know the next time to get it in writing. I guess I'll have to go PRN and lose the insurance. The Most High will see me through tis as with all things. Thank you." ADON Morgan did not respond.

26.    Because Plaintiff had not heard back from ADON Morgan and did not want to be accused of missing a scheduled shift, Plaintiff came into work on Sunday, September 26, 2021 in accordance with the updated schedule. Upon arrival, however, Plaintiff found out that she had been taken off the schedule for that shift. Defendants allowed Plaintiff to work the shift, but only because a nurse from a different floor had called in and Plaintiff offered to cover for that nurse.

27.    On Monday, September 27, 2021, Plaintiff came into work but was sent home and told that she was no longer on the schedule for that shift. Notably, Plaintiff was scheduled to work on Monday, September 27, 2021 under both the initial printed schedule she was given at

orientation and the updated penciled-in schedule. After being sent home, Plaintiff called Veritas to formally complain about the religious discrimination, retaliation, and lack of accommodation.

28.    On or about September 27, 2021, Plaintiff spoke with Julie Kelley, Veritas' Director of Administration, over the phone and complained that she believed she was being discriminated and retaliated against based on her religion and request for religious accommodation. During the lengthy phone call, Plaintiff told Director of Administration Kelley that she had been promised the accommodation when hired and quit her old job based on that promise, but then was later told that the accommodation would not be honored and she would have to go PRN status if she wanted to not work on Shabbat, and then even after she agreed to go PRN, they took her off the schedule without notifying her and failed to put her in PRN status. Director of Administration Kelley promised to raise Plaintiff's concerns with Bob Esmas, Veritas' Chief Operating Officer ("COO"), and get back to her as soon as possible.

29.    Upon information and belief, Director of Administration Kelley informed COO Esmas about Plaintiff's religious accommodation, discrimination, and retaliation concerns and asked COO Esmas to follow up with Plaintiff.

30.    Plaintiff texted ADON Morgan on Tuesday, September 28, 2021, "Hi Tara, just making sure that I am not on the schedule for tonight." ADON Morgan responded, "No you are not on the schedule."

31.    On Wednesday, September 29, 2021, Plaintiff spoke over the phone with several of Defendants' representatives, including but not limited to DON Sorenson, ADON Morgan, and Regional Director Norton. During the call, Defendants' representatives informed Plaintiff that they had spoke with "corporate" and Plaintiff either needed to go on the normal rotation or go PRN. Plaintiff stated again that she could not go on the normal rotation because of her religious

observance of Shabbat. Plaintiff asked how to go PRN, and the representatives responded only by telling her that there were no guaranteed shifts on PRN status. Plaintiff again noted her concerns about the situation, and DON Sorenson said Plaintiff's only other option was to resign. Plaintiff said that it seemed like they resigned for her, because they already took her off the schedule and would not put her on PRN status even though she said, despite believing that the lack of accommodation was unlawful, that she would be willing to go PRN if necessary.

32.    Shortly after the conference call on Wednesday, September 29, 2021, Plaintiff called Director of Administration Kelley, cried to her over the phone, and explained that Defendants' representatives were still not accommodating her and essentially tried to force her to resign. Plaintiff specifically told Director of Administration Kelley that she did not want to resign. Director of Administration Kelley seemed shocked and told Plaintiff that corporate had instructed them to honor the accommodation. Plaintiff asked Director of Administration Kelley to continue looking into the issue and provide help. Director of Administration Kelley promised to talk with COO Esmas again and "handle it."

33.    Plaintiff called multiple times after Wednesday, September 29, 2021, but no one would respond to her. She was never placed back on the schedule or placed on PRN status.

34.    Upon information and belief, COO Esmas instructed Director of Administration Kelley to not answer or return Plaintiff's calls.

35.    Plaintiff never resigned her employment. She was terminated when Defendants took her off the schedule and refused to communicate with her.

## V. PROCEDURAL BACKGROUND

36.     On February 2, 2022, Plaintiff timely filed an EEOC Charge alleging that Defendants violated Title VII and Chapter 21 of the Texas Labor Code by failing to accommodate Plaintiff, discriminating against Plaintiff based on her religion, and retaliating against Plaintiff.

37.     On December 1, 2023, the EEOC issued a determination in Plaintiff's favor, stating that the Commission found "there is reasonable cause to believe that Respondent revoked or disregarded [Plaintiff's] approved religious accommodation … [and] Respondent discriminated against [Plaintiff] due to her religion and in retaliation for having requested a religious accommodation and because she made protected complaints in that the Respondent removed her from the work schedule and ceased communication her, which resulted in the termination of her employment, in violation of Title VII."

38.     On January 31, 2024, the EEOC issued a Notice of Right to Sue.

39.     Plaintiff exhausted her administrative remedies.

40.     Plaintiff now timely files this lawsuit.

## VI. CAUSES OF ACTION

41.     To the extent necessary, each of the claims set forth below is pleaded in the alternative.

**COUNT 1: FAILURE TO ACCOMMODATE UNDER TITLE VII**

42.     All foregoing allegations are incorporated herein by reference.

43.     Defendants are employers within the meaning of Title VII in that Defendants have employed more than 15 employees in each year relevant to this lawsuit.

44.     At the time this claim arose, Plaintiff was a W-2 employee of Defendants.

45.     As set forth above, Defendants failed to make reasonable accommodation for Plaintiff's religion by revoking and/or disregarding Plaintiff's approved religious accommodation and/or by refusing to not schedule Plaintiff on shifts that would interfere with her observance of the Sabbath.

46.     As set forth above, Plaintiff not working on Friday or Saturday overnight shifts would not have caused an undue hardship on Defendants. Defendants explicitly and implicitly admitted that the accommodation was reasonable and not unduly burdensome and granted the accommodation but then later revoked and/or refused to honor it.

47.     At minimum (and to the extent necessary, in the alternative), Plaintiff requested religious accommodation and Defendants failed to engage in the interactive process and then failed to make religious accommodation for Plaintiff even though the requested accommodation was reasonable and not unduly burdensome on Defendants.

48.     Defendants knew, or should have known, that their actions and/or failure to act constituted unlawful religious discrimination and showed willful and/or reckless disregard for Plaintiff's protected rights.

49.     Defendants' actions and omissions constitute violations of Title VII.

50.     As a result of the foregoing, Plaintiff has been injured and damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under the law and/or in equity, including but not limited to damages resulting from said conduct by Defendants and their employees, jointly and severally, in an amount to be proven and/or determined at the time of trial, equitable relief, and attorneys' fees and costs.

## COUNT 2: FAILURE TO ACCOMMODATE UNDER THE TEXAS LABOR CODE

51.     All foregoing allegations are incorporated herein by reference.

52. Defendants are employers as defined by Section 21.141(1)(A) of the Texas Labor Code in that Defendants have employed 15 or more employees during all times relevant to this lawsuit.

53. At the time this claim arose, Plaintiff was an employee of Defendants as defined by Section 21.002(7) of the Texas Labor Code.

54. As set forth above, Defendants failed to make reasonable accommodation for Plaintiff's religion by revoking and/or disregarding Plaintiff's approved religious accommodation and/or by refusing to not schedule Plaintiff on shifts that would interfere with her observance of the Sabbath.

55. As set forth above, Defendants implicitly and explicitly admitted that the accommodation was reasonable and not unduly burdensome and granted the accommodation but then later unreasonably revoked and/or refused to honor it.

56. At minimum (and to the extent necessary, in the alternative), Plaintiff requested religious accommodation and Defendants failed to engage in the interactive process and then failed to make religious accommodation for Plaintiff even though the requested accommodation was reasonable and not unduly burdensome on Defendants.

57. Defendants knew, or should have known, that their actions and/or failure to act constituted unlawful religious discrimination and showed willful and/or reckless disregard for Plaintiff's protected rights.

58. Defendants' actions and omissions constitute violations of Chapter 21 of the Texas Labor Code.

59. As a result of the foregoing, Plaintiff has been injured and damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under the law and/or in

equity, including but not limited to damages resulting from said conduct by Defendants and their employees, jointly and severally, in an amount to be proven and/or determined at the time of trial, equitable relief, and attorneys' fees and costs.

**COUNT 3: RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII**

60.     All foregoing allegations are incorporated herein by reference.

61.     Defendants are employers within the meaning of Title VII in that Defendants have employed more than 15 employees in each year relevant to this lawsuit.

62.     Plaintiff was, at the time this claim arose, a W-2 employee of Defendants.

63.     As set forth above, Defendants violated Title VII by subjecting Plaintiff to discrimination based upon her religion which altered the terms and conditions of Plaintiff's working environment, including but not necessarily limited to discussing Plaintiff's religious beliefs and accommodations with other employees, taking Plaintiff off the schedule, not allowing Plaintiff to even finish out the September schedule, forcing Plaintiff to either work during the Sabbath or go on PRN status and lose guaranteed shifts and health insurance, not placing Plaintiff in PRN status even after she expressed that she was willing to go PRN status if necessary, failing to conduct an unbiased and thorough investigation into Plaintiff's complaints of discrimination and failure to accommodate, trying to force and/or pressure Plaintiff to resign against her will, not placing Plaintiff back on the schedule even after she stated that she would not be resigning, refusing to answer Plaintiff's calls, ceasing all communication with Plaintiff, and/or terminating Plaintiff's employment.  These actions or omissions, taken individually and/or in conjunction with the others, constitute adverse employment actions by Defendants against Plaintiff.

64.     As set forth above, Defendants further violated Title VII by failing to have clear and proper procedures for employees requesting and receiving religious accommodations, for

employees to make complaints about religious discrimination, for Defendants to receive, review, and evaluate requests for religious accommodations, and/or for Defendants to receive, review, investigate, evaluate, and take remedial action regarding employee complaints of religious discrimination. These "no policy" policies and/or practices have a disparate impact on employees like Plaintiff who need religious accommodations and/or suffered religious discrimination.

65. Defendants knew, or should have known, that their actions and/or failure to act constituted unlawful religious discrimination and showed willful and/or reckless disregard for Plaintiff's protected rights.

66. Defendants have not, and are unable to provide, any legitimate, non-discriminatory reasons for the adverse actions taken against Plaintiff.

67. Defendants' actions and omissions constitute violations of Title VII.

68. As a result of the foregoing, Plaintiff has been injured and damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under the law and/or in equity, including but not limited to damages resulting from said conduct by Defendants and their employees, jointly and severally, in an amount to be proven and/or determined at the time of trial, equitable relief, and attorneys' fees and costs.

**COUNT 4: RELIGIOUS DISCRIMINATION IN VIOLATION OF TEXAS LAW**

69. All foregoing allegations are incorporated herein by reference.

70. Defendants are employers as defined by Section 21.141(1)(A) of the Texas Labor Code in that Defendants have employed 15 or more employees during all times relevant to this lawsuit.

71. At the time this claim arose, Plaintiff was an employee of Defendants as defined by Section 21.002(7) of the Texas Labor Code.

72.     As set forth above, Defendants violated Chapter 21 of the Texas Labor Code by subjecting Plaintiff to discrimination based upon her religion which altered the terms and conditions of Plaintiff's working environment, including but not necessarily limited to discussing Plaintiff's religious beliefs and accommodations with other employees, taking Plaintiff off the schedule, not allowing Plaintiff to even finish out the September schedule, forcing Plaintiff to either work during the Sabbath or go on PRN status and lose guaranteed shifts and health insurance, not placing Plaintiff in PRN status even after she expressed that she was willing to go PRN status if necessary, failing to conduct an unbiased and thorough investigation into Plaintiff's complaints of discrimination and failure to accommodate, trying to force and/or pressure Plaintiff to resign against her will, not placing Plaintiff back on the schedule even after she stated that she would not be resigning, refusing to answer Plaintiff's calls, ceasing all communication with Plaintiff, and/or terminating Plaintiff's employment.   These actions or omissions, taken individually and/or in conjunction with the others, constitute adverse employment actions by Defendants against Plaintiff.

73.     As set forth above, Defendants further violated Chapter 21 of the Texas Labor Code by failing to have clear and proper procedures for employees requesting and receiving religious accommodations, for employees to make complaints about religious discrimination, for Defendants to receive, review, and evaluate requests for religious accommodations, and/or for Defendants to receive, review, investigate, evaluate, and take remedial action regarding employee complaints of religious discrimination. These "no policy" policies and/or practices have a disparate impact on employees like Plaintiff who need religious accommodations and/or suffered religious discrimination.

74.    Despite the fact that Defendants knew or reasonably should have known about the discrimination towards Plaintiff, Defendants failed to take remedial action.

75.    Defendants have not, and are unable to provide, any legitimate, non-discriminatory reasons for the adverse actions taken against Plaintiff.

76.    Defendants knew or should have known that their actions constituted unlawful discrimination, and Defendants showed willful and/or reckless disregard for Plaintiff's protected rights.

77.    As set forth above, Defendants' actions and omissions constitute an unlawful employment practice violative of the Texas Labor Code.

78.    As a result of the foregoing, Plaintiff has been injured and damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under the law and/or in equity, including but not limited to damages resulting from said conduct by Defendants and their employees, jointly and severally, in an amount to be proven and/or determined at the time of trial, equitable relief, and attorneys' fees and costs.

**COUNT 5: RETALIATION IN VIOLATION OF TITLE VII**

79.    All foregoing allegations are incorporated herein by reference.

80.    Defendants are employers within the meaning of Title VII in that Defendants have employed more than 15 employees in each year relevant to this lawsuit.

81.    Plaintiff, at the time this claim arose, had been a W-2 employee of Defendants.

82.    Plaintiff engaged in protected activity when she requested religious accommodations and/or when she reported and opposed religious discrimination.

83.    As set forth above, Defendants violated Title VII when they engaged in adverse employment actions against Plaintiff for the purpose of retaliating against her because of her

requests for accommodation and/or reports about and opposition to religious discrimination to which she had been subjected.

84.    Defendants knew or should have known that their actions constituted unlawful retaliation, and Defendants showed willful and/or reckless disregard for Plaintiff's protected rights.

85.    Defendants have not, and are unable to provide, any non-retaliatory reason for the adverse actions taken against Plaintiff.

86.    As a result of the foregoing, Plaintiff has been injured and damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, including but not limited to her damages resulting from Defendants' conduct, jointly and severally, in an amount to be proven and/or determined at the time of trial, equitable relief, and attorneys' fees and costs.

**COUNT 6: RETALIATION IN VIOLATION OF TEXAS LABOR CODE**

87.    All foregoing allegations are incorporated herein by reference.

88.    Defendants are employers as defined by Section 21.002(8)(A) of the Texas Labor Code in that Defendants are engaged in an industry affecting commerce and have employed more than 15 employees in each year relevant to this lawsuit.

89.    Plaintiff was an employee as defined by Section 21.002(7) of the Texas Labor Code at the time this claim arose.

90.    Plaintiff engaged in protected activity when she requested religious accommodations and/or when she reported and opposed religious discrimination.

91.    As set forth above, Defendants violated Chapter 21 of the Texas Labor Code when they engaged in adverse employment actions against Plaintiff for the purpose of retaliating against

her because of her requests for accommodation and/or reports about and opposition to religious discrimination to which she had been subjected.

92.    Defendants knew or should have known that their actions constituted unlawful retaliation, and Defendants showed willful and/or reckless disregard for Plaintiff's protected rights.

93.    Defendants have not, and are unable to provide, any legitimate, non-retaliatory reasons for the adverse actions taken against Plaintiff.

94.    As a result of the foregoing, Plaintiff has been injured and damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, including but not limited to her damages resulting from Defendants' conduct, jointly and severally, in an amount to be proven and/or determined at the time of trial, equitable relief, and attorneys' fees and costs.

## VII. JURY DEMAND

95.    Plaintiff demands a trial by jury of all the issues and facts in this case.

## VIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

a)  The Court assume jurisdiction of this cause and that Defendants be cited to appear;

b)  The Court award Plaintiff economic damages, as specified above;

c)  The Court award Plaintiff compensatory and/or punitive damages, as specified above;

d)  The Court award Plaintiff the equitable remedy of reinstatement or front pay;

e)  The Court award Plaintiff her reasonable attorneys' and expert fees and costs;

f)  The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed; and,

g)  The Court award Plaintiff any such other relief as the Court may find proper, whether at law or in equity.

Respectfully submitted,

*/s/ Brandie A. Moser*
Daniel B. Ross
State Bar No. 00789810
dan@rosslawgroup.com
Brandie A. Moser
State Bar No. 24123223
brandie@rosslawgroup.com
Ross Scalise Beeler and Pillischer
1104 San Antonio Street
Austin, Texas 78701
Telephone: (512) 474-7677
Facsimile: (512) 474-5306
**ATTORNEYS FOR PLAINTIFF**